### IN THE UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF TEXAS

### LUFKIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 9:06-CR-49-2 |
| | § | |
| DEKERION DRASHARD LEWIS | § | |

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

In this action, two defendants with the same last names are charged by indictment with possessing 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, with intent to distribute, a violation of 21 U.S.C. §841(a)(1).   The defendant listed in the caption above moves to suppress incriminating evidence, 100 grams of cocaine base, seized as a result of a traffic stop.  The motion is referred to the undersigned for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law.  United States v. Raddatz, 447 U.S. 667, 681-84 (1980); see also 28 U.S.C. § 636(b)(1)(B) and Local Rules for the Assignment of Duties to United States Magistrate Judge.

The parties agree that no formal evidentiary hearing is required.  The defendant concurs, for purposes of this motion only, that facts proffered in the United

States's response "fully and accurately reflect the facts that this Court should use in deciding" the motion to suppress.  See Docket No. 28.

## I. FACTUAL BACKGROUND

On August 21, 2006, at approximately 8:29 p.m., Officer Heath White ("White"), a Texas Department of Public Safety trooper, conducted a traffic stop of a vehicle outside of Lufkin, Texas, within the Eastern District of Texas, after noticing that the vehicle's license plate light was defective.  Lonvicci Vertez Lewis ("Lonvicci") was the driver, and the movant, Dekerion Drashard Lewis ("Dekerion"), was a passenger in that vehicle.[1]

After pulling the vehicle over, White informed Lonvicci that the plate light was out, and asked to see his driver's license.  White spotted what he recognized as marijuana residue on Dekerion's pants.  White then asked Lonvicci to step outside of the vehicle.  Dekerion remained inside.

White asked Lonvicci questions about his trip, and also asked for proof of insurance.  Lonvicci told White he had insurance information in the car.  White returned to the car and asked Dekerion to retrieve it.

---

[1]    Since defendants share the same last name, referring to them by their given names is necessary for clarity.

While there, White also asked Dekerion about the trip, and received information conflicting with the story given by Lonvicci.[2]  Dekerion told White that his name was "Devodrick" and that his birth date was June 13, 1985.  White then returned to Lonvicci with the proof of insurance, and asked him what his passenger's name was.  Lonvicci responded with "Dekerion."

White called a dispatcher to conduct a computer check on Lonvicci, and indicated to the dispatcher that he also wanted a computer check on Dekerion.  The dispatcher asked White to obtain Dekerion's middle name.  As the dispatcher began the computer check on Lonvicci, White again asked Dekerion for his name, including his middle name.  This time, Dekerion stated his correct name and correct birth date January 9, 1987.

White returned to the dispatcher and gave her this information.  The dispatcher then commenced the computer checks.   Approximately five minutes had elapsed from the inception of the traffic stop to this point.

While waiting for the dispatcher's reports on results of the computer checks, White continued questioning Lonvicci about his trip, and particularly about the apparently conflicting information given by Dekerion.  Lonvicci provided additional

---

[2]      Lonvicci stated that he and Dekerion traveled to Houston so they could take Lonvicci's cousin to see his brother.  Dekerion stated that he went to Houston due to a family emergency; his mother was sick; and he needed to travel to Houston to see what was wrong with her.

information that White felt further illuminated a conflict between Lonvicci's version and Dekerion's story.[3]

After an additional five minutes, computer checks of Lonvicci, Dekerion, and the vehicle all came back negative.  White then informed Lonvicci that he would write a warning ticket for the license plate light, and also told Lonvicci that he needed to have the light replaced.  Lonvicci asked where the nearest Wal-Mart was, and White directed him to Lufkin, Texas.

As Lonvicci signed the warning ticket, White asked for consent to search the vehicle.  Lonvicci gave consent.  The ensuing search revealed more than 100 grams of cocaine base concealed in the engine compartment of the vehicle.

## II. THE MOTION TO SUPPRESS

Dekerion argues that White illegally detained him for purposes of searching the vehicle after the purposes of the traffic stop were completed.  Dekerion argues that White did not have articulable reasonable suspicion of ongoing criminal activity,

---

[3]    Dekerion stated that he traveled to Houston because his mother was sick, and he wanted to find out what was wrong.  Lonvicci stated that Dekerion had no family in Houston, and that Dekerion's mother lived in North Carolina. Dekerion argues that these two statements are not necessarily inconsistent, as he never stated he went to Houston to see his mother, simply to obtain more information about her condition.  While Dekerion's statement may be susceptible to this interpretation, the interpretation given by the United States (Dekerion traveled to Houston to see his mother, and thereby find out what was wrong) is more reasonable, and likely the interpretation that most people, and White, would put on the statement.

and therefore the continued detention after the computer checks came back negative was a violation of his Fourth Amendment right to be free from an unreasonable seizure.  Dekerion states that any tangible evidence seized was seized as a result of the unlawful detention, and therefore must be excluded as evidence.

Dekerion further argues that any inconsistencies between information he gave White and that given by Lonvicci are either minor, or are not inconsistent at all, and therefore do not lead to articulable reasonable suspicion.  Finally, Dekerion notes that White gives no reason why he felt that the residue on Dekerion's pants was marijuana residue, and in any event, the existence of marijuana residue, as opposed to the odor of marijuana, does not provide probable cause for a search of the vehicle.

The United States responds that White had probable cause to search the car from the moment he noted marijuana residue on Dekerion's pants.  The United States further argues that during the course of the traffic stop – which continued no longer than reasonably necessary to effectuate its purposes – White developed an articulable reasonable suspicion of additional criminal activity, such that further detention was lawful.   Finally, the United States notes that Lonvicci gave consent for the search of the car.

## III.  DISCUSSION

### A.  Principles of Analysis

The Fourth Amendment of the Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.  The Fourth Amendment's protection against unreasonable searches and seizures is implemented primarily by a judicially-crafted "exclusionary rule," i.e., the rule that illegally seized items cannot be admitted into evidence during a criminal prosecution.  3 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 661 (2d ed. 1982).  When a defendant invokes that rule and moves to suppress evidence or statements allegedly obtained illegally, the United States's burden is to prove that a warrantless seizure comports with the Fourth Amendment. U.S. v. Chavis, 48 F.3d 871, 872 (5th Cir. 1995).

A warrantless traffic stop is a seizure within the meaning of the Fourth Amendment.  See U.S. v. Valadez, 267 F.3d 395, 397 (5th Cir. 2001). Nevertheless, a motorist's Fourth Amendment expectation of liberty yields to a routine traffic stop for such violations as speeding or changing lanes without signaling.  U.S. v. Roberson,

6 F.3d 1088, 1091 (5th Cir. 1993) cert. denied 510 U.S.  1204.  When the

exclusionary rule is invoked regarding incriminating evidence obtained as a result of a

traffic stop, the Fifth Circuit applies a two-step analytical framework articulated in

Terry v. Ohio, 392 U.S. 1 (1968):

> 1)   The court first determines whether the officer's action was justified at
>      its inception.
>
> 2)   If so, the court then determines whether the search or seizure was
>      reasonably related in scope to the circumstances that justified the
>      interference in the first place.

For a traffic stop to be justified at inception, an officer must have an objectively

reasonable suspicion that some sort of illegal activity, such as a traffic violation,

occurred, or is about to occur, before stopping the vehicle.  U.S. v. Lopez-Moreno,

420 F. 3d 420, 434 (5th Cir. 2005), cert. denied 546 U.S. 1222 (2006).  At the

second step, courts hold that investigatory detention "must be temporary and last no

longer than is necessary to effectuate the purpose of the stop."  See U.S. v. Dortch,

199 F.3d 193, 200 (5th Cir. 1999) (citing Florida v. Royer, 460 U.S. 491 (1983)).

For Terry purposes, a police officer may permissibly detain a motorist to

examine the driver's license and registration and run a computer check to investigate

whether the driver has any outstanding warrants and if the vehicle is stolen.  See U.S.

v. Brigham, 382 F.3d 500, 507-06 (5th Cir. 2004).  An officer may inquire about the

purpose and itinerary of the trip.  Further, the officer's questions need not be related

to the traffic stop since "[d]etention, not questioning, is the evil at which *Terry's* second prong is aimed." Id., at 508. There is, however, no constitutional "stopwatch" on traffic stops. Officers may ask questions of vehicle occupants prior to initiating computer checks. Id. at 511 (stating "neither our prior cases nor any other caselaw of which we are aware institutes a per se rule requiring an officer immediately to obtain background checks before asking questions").

When additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, the detention may continue until the new reasonable suspicion has been dispelled or confirmed. Id., at 507; U.S. v. Grant, 349 F.3d 192, 196 (5th Cir. 2003), cert. denied 540 U.S. 1227 (2004). Limited seizures and searches are permissible and not unreasonable when the officer has a reasonable suspicion that a person has committed a crime. See U.S. v. Meredith, 480 F.3d 366, 369 (5th Cir. 2007). Reasonable suspicion exists when, in the totality of the circumstances, there are particular and articulable facts that, taken together with rational inferences, warrant an intrusion. Id.

### B.  Application

Dekerion does not challenge officer White's action at inception, i.e., the initial traffic stop. Therefore, only the second step of the Terry analysis is important

here.  See U.S. v. Jones, 234 F.3d 234, 240 (5th Cir. 2000) (analyzing only the

second Terry prong after stating that "defendants do not challenge the initial stop");

Valadez, 267 F.3d at 398 (same).

Dekerion lacks standing to contest the legality of the search itself.  See Grant,

349 F.3d at196 (stating "the search of an automobile does not implicate a passenger's

Fourth Amendment rights").  Dekerion does, however, "have standing to challenge

the seizure of his person as unconstitutional."  Id.  If Dekerion's detention was illegal,

he has standing to seek to exclude the evidence found during the search, not because

the search itself was unconstitutional, but because the evidence was the "fruit of the

poisonous tree" of the unconstitutional detention.  See Jones, 234 F.3d at 240 n.2

(noting that as the defendants contested the admissibility of the evidence as the fruit

of an unreasonable seizure, and not the independent validity of the search, it did not

matter if the defendants had standing to contest the search itself); see also Dortch,

199 F.3d at 197 n.4 (noting that it was irrelevant whether the defendant had

standing to challenge the legality of the search; so long as the defendant had a

legitimate interest in not being unreasonably seized, he could seek to suppress

evidence obtained as a result of that seizure).

However, there was no illegal seizure of Dekerion.  First, White asked

Dekerion and Lonvicci permissible questions about their identities, car ownership,

and travel plans for approximately five minutes before initiating the computer checks. This length of time was not unreasonable, considering that Dekerion and Lonvicci were then providing inconsistent information, and that additional time was necessitated by Dekerion initially giving a false name and birth date.

Second, computer checks for arrest warrants regarding both Dekerion and Lonvicci, and also for the vehicle were returned within five minutes after White requested them.  This length of time also was not unreasonable.  See e.g., U.S. v. Shabazz, 993 F.2d 431, 437-38 (5th Cir. 1993) (noting that a routine computer check may run anywhere from two to fifteen minutes, and stating that a four minute wait did not result in an unconstitutional detention).  Thus, there was no illegal detention resulting from the computer checks.

Finally, although detention must end when the purpose of the traffic stop is effectuated, such purpose was not complete when White requested and obtained consent to search from Lonvicci.  A lawful traffic stop does not abruptly end as soon as an officer receives a report on the results of computer checks.  Rather, the purpose of the traffic stop is fulfilled only after the officer issues a citation or determines that no citation will be issued.  U.S. v. Santiago, 310 F.3d 336, 341-42 (5th Cir. 2002). In this instance, both the writing of a warning ticket and the signing and acceptance

thereof by Lonvicci after White received the computer check reports were part of the

purposes of a traffic stop.

White decided to issue a warning ticket to Lonvicci. The facts as agreed to by

Dekerion are that *while Lonvicci was signing the warning citation* White asked for, and

received, consent to search the car.  See Docket No. 24 at 4.  There simply was no

detention beyond the purposes of the traffic stop, as those purposes were incomplete

when White obtained Lonvicci's consent to search the car.  Therefore, neither

Lonvicci nor Dekerion were illegally detained when Lonvicci's consent to search was

given.[4]

---

[4]     In passing, one should note that Lonvicci's independent conduct may
defeat and moot Dekerion's motion to suppress even if the court assumes *arguendo*
that Dekerion and Lonvicci were illegally detained.  Lonvicci was the vehicle
driver, and consented to the search of his property.  In such cases, an officer
needs neither probable cause nor reasonable suspicion to search.  A search
conducted pursuant to voluntary consent is one of the well-settled exceptions to
the Fourth Amendment's warrant requirement. U. S. v. Tompkins, 130 F.3d 117, 121
(5th Cir. 1997), cert. denied 523 U.S. 1036 (1998).
        "Consent to search may, but does not necessarily, dissipate the taint
of a fourth amendment violation."  U.S. v. Jenson, 462 F.3d 399, 406 (5th Cir.
2006).  Generally, a taint is dissipated unless there was an unbroken causal
connection between the violation and the consent. Thus, when consent is voluntary
and there is a "break in the causal chain" between the prior constitutional
violation and the subsequent consent, the taint is dissipated via the consent.
See id..
        Nothing now before the court suggests that Lonvicci's consent was
involuntary.  Moreover, nothing suggests an unbroken causal connection between
the alleged violation (illegal detention) and Lonvicci's consent to search.
Consequently, Lonvicci's consent may have dissipated any taint from an illegal
detention.
        Jurists of reason could disagree over whether *Lonvicci's* consent
dissipated the taint of *Dekerion's* allegedly unlawful detention.  Irrespective
of that, Dekerion's motion would fail due to his inability to show a factual
nexus between the alleged violation of his Fourth Amendment rights and the
discovery of the incriminating evidence.  Lonvicci's unchallenged consent to the
search, unrelated to any alleged violation of Dekerion's rights, broke any causal
connection between Dekerion's detention and the discovery of the evidence.  See
U.S. v. DeLuca, 269 F.3d 1128, 1132-33 (10th Cir. 2001) (explaining that in order
to have evidence excluded as "fruit of the poisonous tree," the defendant must
show a constitutional violation and "a factual nexus between the illegality and
the challenged evidence").

Alternatively, even if the purpose of the traffic stop were effectuated a few seconds before White obtained consent to search, White by then had developed reasonable suspicion of ongoing criminal activity that justified further detention. White's belief, formed by his training and experience, that Dekerion had marijuana residue on his pants, Dekerion's giving of a false name and birth date, extreme nervousness of Lonvicci, and inconsistencies between Dekerion and Lonvicci's information regarding details of their trip, constituted particular and articulable facts that, taken together with rational inferences, combined to provide a sufficient reasonable suspicion that justified a continuing detention.[5]

## IV. RECOMMENDATION

The motion to suppress evidence should be denied because there was no detention of Dekerian Lewis beyond legitimate purposes of the traffic stop; and, alternatively, if there were an extended detention, White had reasonable suspicion sufficient to justify the detention.

---

[5]     Inconsistencies and nervousness alone do not support a reasonable suspicion.  See Santiago, 310 F.3d at 338-39; U.S. v. Portillo-Aguirre, 311 F.3d 647, 656 n. 49.  These facts can, however, be taken into consideration along with other facts and circumstances to create reasonable suspicion.  See United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003).

## IV.  OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, see Rodriguez v. Bowen, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, see Douglas v. United Servs. Auto. Ass'n., 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

SIGNED this  __22__  day of May, 2007.

_____
Earl S. Hines
United States Magistrate Judge